NUMBER 13-00-456-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS
 CHRISTI

 



 

BEATRIS MOYA,                                                                   Appellant,

 

                                                   v.

 

GOLIAD COUNTY, TEXAS,                                                     Appellee.

 



 

                         On appeal from the 24th District Court

                                   of Goliad
 County, Texas.

 



 

                                   O P I N I O N

 

                    Before Justices Dorsey, Hinojosa, and
Castillo

                                  Opinion by Justice Castillo

 








Appellant Beatris Moya (AMoya@) appeals from
a summary judgment issued against her based on Goliad County=s affirmative
defense of sovereign immunity.  In two
issues, she argues that summary judgment was improper due to the existence of a
Aspecial defect@ on the land
or, alternatively, a Apremises defect@ of which Goliad County was
aware.  We affirm.

Factual Summary


On June 16, 1997, Richard Zapata was driving east on Kohl Road in rural Goliad County, on the way to
Victoria, Texas.  His common-law wife, Beatris
Moya, was a passenger in the car.  The road he was driving was straight and
unobstructed.  Zapata was driving between
twenty-five and thirty miles per hour, in order to avoid hitting an animal
crossing the road.  As Zapata was
driving, a deer jumped in his path, resulting in a collision between the car
and the deer.  As a result of the
collision, Zapata=s car went off
the road, and Moya sustained injuries to her head,
neck, and jaw.[1]








Moya sued Goliad County for her
injuries under the Texas Tort Claims Act, claiming that the high grass located
along the roadside obscured the presence of the deer until it leapt into the
road, preventing Zapata from avoiding the collision.  It is undisputed that the grass along the
roadside was in excess of three feet at the time of the accident.  Goliad County periodically
cut the grass on its rural roads, but had not yet cut the grass on Kohl Road at the time of
the accident.  Moya
asserted liability against the County under both Apremise defect@ and Aspecial defect@ grounds of the
Texas Tort Claims Act.[2]

Goliad County moved for a
traditional summary judgment, on the basis that it, as a government entity, was
immune from suit under the doctrine of sovereign immunity, because the claims
brought did not fall under the limited waiver provisions of the Tort Claims Act
as to either premise or special defects. 
The trial court rendered summary judgment for Goliad County, and this
appeal followed.

Standard of
Review

Under a
traditional summary judgment under Texas Rule of Civil Procedure 166a(c), the movant has the burden of showing that there is no genuine
issue of material fact and is entitled to judgment as a matter of law.  American Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1985).  In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.  Id.  Every reasonable inference must be
indulged in favor of the nonmovant and any doubts
must be resolved in favor of the nonmovant.  Id.  Evidence favoring the movant=s position will
not be considered unless it is uncontradicted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1972).  A defendant=s motion for summary judgment must
disprove at least one essential element of each of the plaintiff=s causes of
action, or establish all the elements of an affirmative defense as a matter of
law.  City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979). 








 

 

Sovereign
Immunity and the Tort Claims Act

As a general rule, government entities are immune from tort
liability under the doctrine of sovereign immunity unless the legislature has
waived immunity.  Harris County  v. Dillard, 883 S.W.2d 166, 168 (Tex. 1994).  Whether a particular claim falls into an
exception from the general doctrine of sovereign immunity is entirely dependant
on the statutory language.  Dallas County Mental Health
& Mental Retardation v. Bosley, 968 S.W.2d
339, 341 (Tex. 1998).  

The Texas Tort Claims Act provides that government units are
liable for Apersonal injury
and death so caused by a condition or use of tangible personal or real property
if the government unit would, were it a private person, be liable to the
claimant according to Texas law.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021(2) (Vernon 1997).  It is undisputed that the County of Goliad is a Agovernment unit@ as defined by
the Texas Tort Claims Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.001(3) (Vernon Supp.
2001).  

Moya alleges in this case that the
tall grass located along the side of Kohl Road constituted a
dangerous condition of Goliad County=s real property,
thus creating liability for the County. 
The Texas Tort Claims Act recognizes liability for two types of
dangerous conditions of real property B premise
defects and special defects. Tex. Civ.
Prac. & Rem. Code Ann. '101.022 (Vernon 1997).  








Where it is asserted that the injury is caused by a premise
defect, the governmental unit owes to the claimant only the same duty as a
private person owes to a licensee on private property. Tex. Civ. Prac. & Rem. Code Ann. '101.022(a) (Vernon 1997).  Thus the government=s only duty is
not to injure the claimant  willfully,
wantonly, or through gross negligence.  State
Dep=t of Highways
and Public Transp. v. Payne, 838 S.W.2d 235,
237 (Tex. 1992) (op. on reh=g); State v.
Tennison, 509 S.W.2d 560, 562 (Tex. 1974). The
exception to this rule is that, where a landowner has actual knowledge of a
dangerous condition, and the licensee does not, the landowner then has the duty
either to warn the licensee or to make the condition reasonably safe.  Tennison, 590
S.W.2d at 562.  For there to be
liability under such exception, constructive knowledge is insufficient; rather,
there must be proof of actual knowledge on the part of the landowner as to the
dangerous condition in question.  Tennison, 509 S.W.2d at 562.








However, the limitation of the government=s duty to
claimants to that duty owed by a private landowner to a licensee does not apply
to the government=s duty to warn
of special defects such as excavations or obstructions on highways, roads, or
streets or to warn of the absence, condition, or malfunction of traffic
regulators.  Tex. Civ. Prac. & Rem. Code Ann. '101.022(b) (Vernon 1997). 
Where there exists a special defect, the government unit owes the same
duty to drivers as a private landowner owes to an invitee.  Payne, 838 S.W.2d at 237.  That is, the government unit must exercise
ordinary care to protect the driver / invitee from a dangerous condition which
the government unit is or reasonably should be aware.  Id.  A special defect is generally limited to
those conditions which occur on the surface of the road, or pose a threat to
ordinary users of the roadway.  Id. at 238-39.

The question of whether an alleged defect is a special defect
or premise defect, and thus what duty is owed, is a question of law.  State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999).  We therefore consider this issue de
novo.  Since, generally, defects in the
condition of land that are not special defects are, by default, premise
defects, we will first consider whether the alleged defect in question was a
special defect under law. 

Special or Premise Defect?

A dangerous
condition need not have been created or caused by the government unit to
constitute a special defect.  County of Harris v. Eaton, 573 S.W.2d
177, 179 (Tex. 1978).  However, the condition needs to be analogous
to and of the same degree as Aexcavations or
obstructions on highways, roads, or streets.@  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(2) (Vernon 1997); Johnson
v. Texas Dep=t of Transp., 905 S.W.2d 394, 399 (Tex. App.BAustin 1995, no
writ).  It must present Aan unusual and
unexpected danger to ordinary users of roadways.@  Payne, 838 S.W.2d at 238. 








Most property defects
are premise defects, not special defects. 
City of San Benito v. Cantu, 831 S.W.2d 416, 422 (Tex. App.BCorpus Christi 1992,
no writ).   In general,
tall vegetation that obstructs the view of a driver is considered to be a
premise defect, and not a special defect. 
Sipes v. Texas Dep=t of Transp., 949 S.W.2d 516, 521 (Tex. App.BTexarkana 1997,
writ denied).  Texas courts
reviewing Agrass on the
side of the road@ claims have
consistently held that vegetation obscuring hidden dangers does not constitute
a special defect.  See Anderson v.
Anderson County, 6 S.W.3d 612, 615-16 (Tex. App.BTyler 1999, pet
denied) (vegetation on a rural road covering a stop sign was not a special
defect);
Wildermuth v. Parker County, 1 S.W.3d 705, 708
(Tex. App.BFort Worth 1999, no
pet.) (trees and vegetation along the side of the road not considered a special
defect, even though they obscured oncoming traffic); Johnson, 905 S.W.2d
at 399 (vegetation obscuring a stop sign is not a special defect).








In this case, Moya claims that tall grass on the side of the road
obscured the driver=s view of a hidden
danger, the deer, precipitating the accident. 
We find that Goliad County presented sufficient
summary judgment evidence to demonstrate that the tall grass did not constitute
a special defect in this case.  Moya and her husband testified that they traveled Kohl Road with some
frequency.  Both testified that they knew
the grass on the side of the road was high and believed that it was
dangerous.  Zapata admittedly knew that
deer and other animals crossed this road, and he was driving slowly in order to
prevent collision with an animal.  Under
such circumstances, we cannot say that the danger presented by the tall grass
was either unexpected or unusual, and therefore it was not a special defect.  Since there was no special defect, the trial
court did not err in granting summary judgment as to appellant=s special defect
claim.  Accordingly, we overrule Moya=s first issue.

Liability under the
Premise Defect Standard

Since we have
determined that the alleged hazard was a premise defect, we consider then
whether the trial court was correct in granting a summary judgment against appellee=s claim under this
theory of liability. 

As previously stated,
in the case of a premise defect, the ordinary duty of a governmental unit is
only to not willfully, wantonly, or through gross negligence injure those using
its land.  Payne, 838 S.W.2d at
237.  An exception exists, however, in
such cases where the governmental unit had actual knowledge of a dangerous
condition, and the person on the land did not. 
Tennison, 509 S.W.2d at 562.  In those cases, there then exists the further
duty to exercise reasonable care to warn or make safe the dangerous condition.  Id. 

I. The Tennison Exception

We will first consider
whether the Tennison exception applies,
and therefore whether a duty was imposed on Goliad County to warn or make safe
the dangerous condition.  Tennison, 509 S.W.2d at
562.  Such additional duty would only arise if the
County had actual knowledge of the dangerous condition and Moya had no knowledge of that same condition.  Id. (emphasis
added).  We therefore review the evidence
as to the question of the actual knowledge of the parties.








Goliad County presented summary
judgment evidence conclusively demonstrating that Moya
had actual knowledge of the dangerous condition of the road.   A government unit owes no duty to warn or
make safe a premise defect that the driver (or in this case, passenger) on the
road knows about herself.  Payne,
838 S.W.2d at 237.   The burden is
on the person suing under the Tort Claims Act to prove that she had no actual
knowledge of the dangerous condition.   Id.  Moya did not
present any summary judgment proof demonstrating that she did not know about
the dangerous condition.  On the
contrary, in depositions, Moya testified that she had
to drive down Kohl Road at least once a week to get to and from her residence,
and Zapata testified that he drove on Kohl Road two or three times a week.  Both Zapata and Moya
testified that they believed the grass along Kohl Road created a dangerous
condition for a month prior to the accident, although neither notified the
County of their concern.  In light of
these facts, we find that Goliad County had met its burden on
summary judgment to prove that Moya had knowledge of
the dangerous condition.








Further, we note that
there was no evidence presented to the trial court demonstrating that the
County had actual knowledge of a dangerous condition at the spot of the
accident prior to its occurrence.  At
most, Moya has demonstrated that County Commissioner
Precinct Four, Wayne Key, had traveled down Kohl Road many times in 1997, and,
due to his experience as a hunter, was generally aware that deer sleep in high
grass.  Moya
also presented evidence demonstrating that between 1995 and 1997, twenty-one
auto accidents occurred in Goliad County involving
animals.  However, there was no evidence
presented that any incidents involving cars colliding with deer or any other
animals had been reported on Kohl Road prior to the one in which Moya was injured. 
Because Goliad County is a predominantly rural county possessing
hundreds of miles of roads both paved and unpaved,[3]
we cannot conclude  that its agents
possessed actual knowledge of a hazardous condition caused by high grass at a
particular location on a rural road, absent evidence of some sort of
notification or complaint given to the county regarding the hazard.  

As Moya
knew of the dangerous condition, we find that the Tennison
exception does not apply and the County had no duty to warn of or make safe
the condition.  Tennison,
506 S.W.2d at 562.  Thus the only duty
owned by the County to Moya was the ordinary one not
to injure her willfully, wantonly or through gross negligence.  Payne, 838 S.W.2d at 237; Tennison, 506 S.W.2d at 562.  We therefore next consider whether the
evidence was sufficient to demonstrate that the County did not fail in this
duty.  See Cobb v. Texas Dep=t of Crim. Justice, 965 S.W.2d 59, 62 (Tex. App.BHouston [1st Dist.] 1998,
no pet.)(where plaintiff knew of defect, and thus Tennison
exception did not apply, he could only recover under the Texas Tort Claims
Act if he could prove gross negligence or willful, wanton conduct);  Simpson v. Harris County, 951 S.W.2d
251, 254 (Tex. App.BHouston [14th Dist.]
1997, no pet.)(where county not liable under Tennison
exception, court considers liability under gross negligence standard).

II. Willful or Wanton
Conduct and Gross Negligence








Gross negligence
consists of Asuch an entire want of
care as to establish that the act or omission was the result of actual
conscious indifference to the rights, safety, or welfare of the person
affected.@  See Tex.
Civ. Prac. & Rem. Code Ann. ' 41.0001(5) (Vernon Supp. 2002).  Ordinary negligence rises to the level of
gross negligence when it can be shown that the defendant was aware of the
danger but did not care to address it.  Burk
Royalty Co. v. Wells, 616 S.W.2d 911, 922 (Tex. 1981).

We find that Goliad County has presented
sufficient evidence to refute Moya=s claim that it acted
willfully, wantonly, or with gross negligence with respect to the grass on the
side of Kohl Road
.  Kohl Road is located in a rural section of Goliad County, not in the middle of
a city, and thus a certain amount of grass and other vegetation along the side
of the road is to be expected.  County Commissioner Key testified that he
personally drove the roads in his precinct in order to determine what grass
needed cutting.  Goliad County cut all the grass
along the sides of its roads two or three times a year, and was in the process
of cutting the grass along a different section of Kohl Road when Moya=s accident
happened.  No complaint was ever brought
to Goliad County regarding the height
of the grass on the particular section of Kohl Road that Moya was injured on, prior to her injury.  There is no indication in the record that any
accidents involving deer or other animals had occurred on Kohl Road prior to this
one.  Given these facts, we cannot say
that Goliad County=s failure to cut tall
vegetation where this accident occurred was willful, wanton, or grossly
negligent.  








We therefore find that Goliad County adequately
demonstrated that Moya=s claims did not satisfy the requirements
necessary to recover for a premise defect under the Tort Claims Act, and we
overrule issue number two.  

 

Conclusion

Having
overruled both of Moya=s issues, we affirm the judgment of the trial
court.                                                                  

ERRLINDA
CASTILLO

Justice

 

Do not
publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 2nd day of May,
2002.

 











[1]The
Goliad
 County
sheriff=s office was
not notified of the accident at the time it occurred, nor at any time prior to
the institution of this lawsuit.





[2]
Tex. Civ. Prac. & Rem. Code Ann. '101.022
(Vernon
1997).





[3]Goliad
 County
has an area of 854 square miles and contains 316 miles of roads.